UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BARBARA NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-413 CAN |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | | |

**OPINION AND ORDER**

On June 30, 2006, Plaintiff Barbara Nelson (Nelson) filed her complaint in this Court. On November 7, 2006, Nelson filed an opening brief and she asks this Court to enter judgment in her favor or to remand this matter to the Commissioner. On December 21, 2006, Defendant Social Security Administration (SSA) filed its response brief. On January 3, 2007, Nelson filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On January 23, 2003, Nelson filed her application for Disability Insurance Benefits (Tr 12).  Nelson is insured for Disability Insurance Benefits through December 22, 2001 (Id.). Nelson claims she is entitled to benefits pursuant to Titles II of the Social Security Act.   See 42 U.S.C. §§ 416(i), 423, 1381a..

On September 29, 2004, Nelson appeared at a hearing before an Administrative Law Judge (ALJ), who issued a denial of Nelson's claim (Tr. 35-45). The Appeals Council granted Nelson's request for review on March 7, 2004, and as a consequence, a second hearing was held

on September 29, 2004, before an ALJ (Tr. 317-62). On January 11, 2006, the ALJ found Plaintiff not disabled (Tr. 12-20).

The ALJ found that Nelson had not engaged in substantial gainful activity since December 22, 2001, and that her impairments of fibromyalgia,[1] affective disorder, and anxiety were severe (Tr. 14). However, the ALJ found that Nelson did not have any impairments that met one of the impairments in 20 C.F.R. app. 1, subpart P, § 404 (Id.). The ALJ found that Nelson had the residual functional capacity (RFC) to perform light work that did not involve more than occasional conversations with co-workers, supervisors, or the public, lift and carry 20 pounds occasionally and 10 pounds frequently, and stand or walk for up to 6 hours at a time (Id.). Therefore, although Nelson could not perform her past work, she could perform other jobs that exist in significant number in the national economy, which meant Nelson is not disabled (Tr. 19).

Nelson appealed the ALJ's decision to the Appeals Council. (Tr. 4-16) The Appeals Council denied review, and as a result, the ALJ's decision became the Commissioner's final decision (Id.). 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on June 20, 2006, Nelson filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

II.   **ANALYSIS**

  A.   Facts

---

[1]Fibromyalgia is a common syndrome of chronic widespread soft tissue pain accompanied by weakness, fatigue, and sleep disturbances, the cause of which is unknown. Stedman's Medical Dictionary 725 (28th ed. 2006).

2

At the time the of the ALJ's decision, Nelson was a 47 year old with a high school education (Tr. 18-19).  Her most recent employment was as a cashier and stocker in the pharmacy department at a WalMart store (Tr. 321).

Nelson alleges that she has both psychological and physical limitations.  Nelson alleges that she suffers from bipolar disorder, fibromyalgia, arthritis, foot problems, depression, nervous condition, joint and foot pain, and mood swings (Tr. 78).[2]  Nelson alleges that her problems cause her to not function around people (Tr. 85).  Specifically, she becomes nervous and is extremely paranoid, which affects her ability to work (Id.).  Also, she has joint fatigue and pain and low energy levels (Tr. 85).  Because of Nelson's problems, she is only able to do light house work, such as dusting and washing dishes, in short periods of time (Tr. 99).  She has trouble bending, standing, or stooping, and she frequently has to take breaks (Id.; Tr. 327).  Nelson saw two main doctors to assist her, Steven D. Ko, M.D.(Dr. Ko) and Dr. James Bain, M.D. (Dr. Bain).

1.   Dr. Ko

---

[2] Nelson also alleges psychological problems cause or contribute to her disability.  However, Nelson only argues that the ALJ failed to assess the credibility of the lay witnesses, Nelson's relatives, based on the psychological evidence.  When a witness's testimony does not constitute a separate line of evidence and merely reiterates and corroborates the claimant's testimony, an ALJ does not need to address it.  See Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993).  The ALJ merely needs to articulate his assessment to assure this Court that he considered the most important evidence so that the ALJ's reasoning can be traced.  Id. There is nothing in the testimony of Nelson's relatives that is different from other evidence in the record so as to constitute a new line of evidence.  There is nothing in the testimony of Nelsons's relatives that makes this Court question the ALJ's reasoning, or to persuade it that the ALJ failed to consider the most important evidence. The ALJ's credibility findings regarding Nelson's relatives was supported by substantial evidence, and as a result, this Court will not engage in an in-depth analysis of Nelson's psychological problems.

In February of 2001, Dr. Bain, who was Nelson's general practitioner, referred Nelson to Dr. Ko, who is a rheumatologist (Tr. 222-23).[3] Dr. Ko found that Nelson suffered from fibromyalgia, and that fibromyalgia was the cause of most of her major symptoms (Tr. 221). Dr. Ko noted that Nelson suffered from hip pain that was aggravated with ambulation up and down stairs (Tr. 222). Dr. Ko's impression was that Nelson had widespread pain with multiple tender points consistent with fibromyalgia (Tr. 223A). Dr. Ko recommended Nelson to have an exercise program to assist with her condition (Tr. 131).

    2.    <u>Dr. Bain</u>

Nelson saw her general practitioner, Dr. Bain, for a variety of problems since, at least, 1996 (Tr. 207-219). After Nelson had met with Dr. Ko, Dr. Bain saw Nelson on January 27, 2003, (Tr. 212). Dr. Bain treated Nelson for a variety of problems including her fibromyalgia (<u>Id</u>.). Dr. Bain indicated that Nelson was in a great deal of pain (<u>Id</u>.). Dr. Bain also opined that he did not feel that Nelson would be able to return to work (<u>Id</u>.). On April 16, 2003, Dr. Bain again saw Nelson, and he reiterated that Nelson was suffering from problems with her fibromyalgia (Tr. 211). Dr. Bain prescribed some medication for Nelson to cope with the pain (<u>Id</u>.).

On September 26, 2003, Dr. Bain issued a letter where he indicated Nelson had severe limitations (Tr. 209). Dr. Bain felt Nelson could not do a great deal of working, as her previous job required, and that due to the nature of fibromyalgia, there was little that they could do to treat her symptoms (<u>Id</u>.).

---

[3] A rheumatologist is a specialist in rheamatism, an indefinite term dealing with various conditions with pain of articular origin or related to other elements of the muskuloskeletal system. <u>Stedman's Medicial Dictionary</u> 1689.

3.   Consulting Physicians

In March of 2003, at the SSA's request, Nelson saw Dosik Kim, M.D. (Dr. Kim) (Tr. 152). Dr. Kim indicated that Nelson reported problems with pain (Id.).  With regards to Nelson's fibromyalgia, Dr. Kim indicated that she did have multiple trigger points, but that she was on medication, which seemed to help (Tr. 157).[4]  However, Dr. Kim found that her hand, finger, and wrist strength were generally normal, that she could ambulate normally, and that there were no limitations to keep her from working (Tr. 155-57).

In April of 2003, at the SSA's request Nelson also saw A. Lopez, M.D. (Dr. Lopez).  Dr. Lopez found that Nelson could occasionally lift 50 pounds, frequently lift 25 pounds, and that she could stand or walk for up to six hours (Tr. 164). Dr. Lopez also confirmed that Nelson had fibromyalgia, but dr. Lopez also indicated that Nelson was only partially credible and emitted poor effort (Tr. 165-68).

The issues this Court must resolve is whether the ALJ's determinations to not award Nelson's treating physician controlling weight was supported by substantial evidence, and whether the ALJ failed to appropriately assess Nelson's credibility.

B.   Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant

---

[4] With the criteria for determining fibromyalgia, "[d]igital palpation should be performed with a moderate degree of pressure.  For a tender point to be considered positive, the subject must state that the palpation was painful." Harrison Principals of Internal Medicine Volume II 2056 (16th ed. 2005).

evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

    C.    Nelson's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Nelson must establish that she was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If there is an affirmative answer at either step three or step five, then there is a finding of disability.  Briscoe, 425 F.3d at 352.  At

6

step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  Id.

The ALJ found that the claimant's residual functional capacity allowed her to perform other work that existed in significant numbers in the national economy at step five.  As a result, she was not disabled.  Nelson asserts two arguments attacking the ALJ's assessment of Nelson's case.  First, Nelson contends that the ALJ failed to give the appropriate amount of deference to the opinions of her treating physician.   Second, Nelson contends that the ALJ improperly evaluated her credibility.

> 1. The ALJ's determinations that the opinions of Nelson's treating physician were not controlling is supported by substantial evidence

Nelson contends that the ALJ erred by not assigning more evidentiary weight to the opinions of her treating physician Dr. Bain.  An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006).  "This rule . . . seems to take back with one hand what it gives with the other, and as a result to provide little in the way of guidance to either." Id. More weight is generally given to the opinion of a treating physician because he is

7

more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. However, the ALJ must avoid substituting his own opinion for that of the treating physician without relying on medical evidence or authority in the record. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870; Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996). When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3d.at 377 (citations omitted). Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances. Id.

The ALJ gave some weight to Dr. Bain's opinions, but he did not give them controlling weight (Tr. 17). The ALJ explained that he did not give Dr. Bain's opinions controlling weight because it was not consistent with the objective medical evidence, and as a result, he awarded greater weight to the SSA consulting physician opinions (Id.). The ALJ then proceeded to recite the objective medical evidence, such as her test results, the findings of Dr. Ko, and the findings of the SSA consulting physicians (Tr. 17-18). The ALJ also noted that Dr. Bain's notes indicated that he treated Nelson for a variety of problems, but his progress notes indicated that her physical limitations were generally unremarkable (Tr. 18).

8

Nelson contends that the ALJ committed error because he failed to provide an adequate explanation of his findings. Specifically, Nelson argues that the ALJ did not specifically elaborate on what the objective evidence with which Dr. Bain's opinions were inconsistent.

However, this argument misconstrues the ALJ's opinion. While the ALJ does not explicitly indicate within the same sentence or paragraph what objective evidence is not consistent with Dr. Bain's opinion, the ALJ recites in the following paragraphs a large amount of evidence from the record. Following his recitation of evidence of the record, the ALJ then continues to evaluate Dr. Bain's records. While the ALJ could have, no doubt, been clearer with his analysis, this Court is quite able to follow the ALJ's reasoning. The ALJ has built an adequate bridge from his analysis to his conclusion.

Furthermore, the ALJ's decision to not grant Dr. Bain controlling weight was reasonable.

Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. The ALJ referenced the findings of Dr. Ko, one of Nelson's treating physicians, and the opinions of the SSA consulting physicians. With regards to Dr. Ko, the ALJ points to the fact that Dr. Ko's examinations were generally within normal limits except for mild obesity and multiple tender points. Similarly, the consulting physicians found that Nelson had no physical limitations. Based on these findings, this Court finds that it was reasonable for the ALJ not to award Dr. Bain controlling weight. The ALJ relied on the objective medical evidence of both Dr. Ko and the opinions of the consulting physicians appointed by the SSA. This situation is not like See Gudgel v. Barnhart, 345 F.3d 467, 470 (2003), where the ALJ's only cited objective evidence was the consulting physicians.

9

As a result, under Hofslein, the ALJ appropriately considered the opinions of Dr. Bain as another piece of evidence to be weighed.

Nelson's final argument is that because all of the doctors found that Nelson suffered from fibromyalgia, the ALJ erred in not granting Dr. Bain controlling weight. While all of the physicians agree Nelson has fibromyalgia, it does not mean the ALJ's analysis is unreasonable. Even though Nelson is correct that the opinions of Dr. Ko and the consulting physicians agree with Dr. Bain, those same physicians do not indicate, as Dr. Bain does, that Nelson could not perform substantial activity. A reasonable conclusion may be that Dr. Bain is entitled to controlling weight because Dr. Ko and the consulting physicians agree Nelson has fibromyalgia, but it is equally reasonable to reach the opposite conclusion because all the physicians do not indicate Nelson cannot perform substantial activity. Essentially, Nelson appears to be asking this Court to re-weight the evidence, which it will not do. Haynes, 416 F.3d at 626.

In summary, this Court finds that the ALJ provided an adequate bridge for this Court to follow the ALJ's analysis, and the ALJ reasonably found that Dr. Bain's opinions were not consistent with objective medical evidence in the record. The ALJ's decision not to award Dr. Bain controlling weight was supported by substantial evidence.

      2.      <u>The ALJ's determination of Nelson's credibility was not supported by substantial evidence</u>

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). "Only if the trier of fact grounds his credibility finding in an

observation or argument that is unreasonable or unsupported . . . can the finding be reversed." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted).  Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002).  An ALJ cannot simply state that an individual's allegations are not credible.  Golembiewski, 322 F.3d at 915.  Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms.  Zurawski v Halter, 245 F.3d 881, 887 (7th Cir. 2001).  When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision.  Clifford, 227 F.3d at 872.  However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence."  Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

Severe pain can be totally disabling.  See eg. Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004); Zurawski, 245 F.3d at 889.  Where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations. Zurawski, 245 F.3d at 887-88.  If an ALJ finds that an allegation of pain is not supported by the objective medical evidence in the record, and if the claimant still indicates that pain is a significant factor of his or her alleged disability, then the ALJ must obtain detailed description of the claimant's daily activities by directing specific inquires about the pain and its effects to the claimant.  Zurawski, 245 F.3d at 887.

The ALJ recognizes, and every doctor in the record agrees, that Nelson was diagnosed with fibromyalgia.  However, the diagnosis of fibromyalgia is not what Nelson appears to claim

11

is disabling as the SSA suggests.  Nelson, however, claims the effects of her fibromyalgia are disabling.  More specifically, the pain caused by her fibromyalgia.  The ALJ must consider a claimant's subjective complaints of pain if supported by medical signs and findings.  Clifford, 227 F.3d at 871.  The record is replete with evidence of Nelson's complaints of pain.  At the first hearing, Nelson testified that she experienced pain in her back, shoulders, and neck, and she indicated that standing caused her to have trouble with her legs and hips (Tr. 325).  Nelson testified at the second hearing that she has pain that affects her back, her lower back, feet and legs, and that she had to lay down and prop her feet up to relieve the pain (Tr. 347).  Nelson also filled out a questionnaire where she indicated she could not walk because of pain or lift things because of pain (Tr. 115).  While Nelson's testimony is purely subjective evidence, objective evidence also exists regarding Nelson's pain.  Dr. Ko, one of Nelson's doctors, indicated in his report that Nelson was suffering from pain (Tr. 133-35). The internal medicine examination by Dr. Kim also indicated that Nelson was suffering from pain and tingling sensations, and that she was on medications to treat her pain (Tr. 152-57).  Dr. Bain, her treating physician, also indicates that Nelson was in pain and gave her medication to treat her pain (Tr. 211, 214, 257).[5]

The ALJ found that Nelson's "allegations regarding her physical impairments are not generally credible."  (Tr. 17).  The ALJ did not indicate whether the objective medical evidence undercut her credibility or how the ALJ determined she was not credible.  The ALJ does not indicate that he based his credibility determination on subjective reasons, such as conflicting testimony or Nelson's demeanor.   At best, this Court can assume the ALJ found the objective

---

[5]While Dr. Bain, as this Court has found, was properly found not to be awarded controlling weight, the ALJ still gave his opinions some weight.  Therefore, Dr. Bain's recounts of Nelson's pain does constitute further evidence of Nelson's pain.

12

medical evidence undercut Nelson's credibility.[6]  However, the ALJ's opinion is devoid of any discussion regarding Nelson's claims of pain or the objective evidence that supports her claims of pain.

An ALJ decision cannot stand if it lacks an adequate discussion of the issues.  <u>Lopez</u>, 336 F.3d at 539.  Even though Nelson claims pain contributed to her disability and there is objective evidence in the record to support her claims of pain, the ALJ did not address Nelson's claims of pain.  As a result, this Court cannot discern whether the ALJ found Nelson's claims of pain were supported by the objective medical evidence or not.  Furthermore, if the ALJ did make this determination, the ALJ should have detailed Nelson's daily activities with specific inquires about Nelson's pain and its effects in accordance with <u>Zurawski</u>, which he did not do.  The ALJ's opinion simply lacked an adequate discussion of the issues regarding Nelson's credibility because he did not address Nelson's subjective claims of pain or how the objective evidence does not support those claims.  This Court is not suggesting that the ALJ's credibility determination was incorrect, but only that more elaboration is necessary.  <u>Zurawski</u>, 245 F.3d at 888. Consequently, a remand is warranted.

In summary, Nelson claimed that she was disabled, in part because of her fibromyalgia, the pain it causes her, and the effects of that pain. The ALJ's opinion is devoid of any finding or discussion regarding Nelson's claims of pain and how the objective evidence does not support

---

[6]In the very next sentence, the ALJ states, "<u>[i]n addition</u>, the allegations made by the claimant's mother, sister, and niece regarding the claimant's physical impairments are not persuasive since they <u>too</u> are not consistent with the objective medical evidence."  (Tr. 17).  The use of the language "in addition" and "too" suggests to this Court that the ALJ is relating the same analysis to Nelson's credibility determination.

13

Nelson's claims.  Therefore, the ALJ failed to adequately discuss all issues regarding Nelson's credibility and a remand is warranted.

### III.    CONCLUSION

The ALJ's determination that Nelson's treating physician was not entitled to controlling weight was supported by substantial evidence, but the ALJ's analysis of the claimant's credibility was not supported by substantial evidence.  As a result, this Court **GRANTS** Nelson's request and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The clerk is instructed to term the case.

**SO ORDERED.**

Dated this 4th Day of April, 2007.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge